1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

9

AT SEATTLE

10

AMAZON.COM. INC.,

11

Plaintiff,

CASE NO.  C05-00719RSM

12

v.

13

ATLANTIC MUTUAL INSURANCE
COMPANY,

MEMORANDUM ORDER
GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT RE DUTY TO
DEFEND

14
15

Defendant.

16
17

## I.  INTRODUCTION

18

        This matter comes before the Court on plaintiff's motion for summary judgment re duty

19

to defend.  (Dkt. #4).  Plaintiff argues that it is entitled to summary judgment establishing the

20

existence of a duty to defend under defendant's insurance liability policy.  Moreover, plaintiff

21

contends that a Washington Court of Appeals decision which held that Atlantic Mutual was

22

obligated to defend an Amazon.com subsidiary under the exact same insurance policies and for

23

the exact types of claims at issue in the instant case definitively resolves defendant's duty to

24

defend.  *See Amazon.com Int'l, Inc. v. Am. Dynasty Surplus Lines Ins Co.*, 120 Wn. App. 610,

25
26

MEMORANDUM ORDER
PAGE - 1

85 P.3d 974, *rev. denied*, 152 Wn.2d 1030, 103 P.3d 200 (2004).[1]  Plaintiff argues that the components which trigger an insurer's duty to defend in patent infringement lawsuits brought against an insured have all been met in the instant case.  Furthermore, plaintiff contends that it is entitled to reimbursement for defense costs, attorney fees, and to a 12% prejudgment interest on defense costs it has already paid.

Defendant argues that summary judgment should be denied because the underlying patent infringement lawsuits do not allege an advertising injury that is covered under any of its three insurance policies.  Defendant contends that the patents at issue are too far removed from the consumer to meet the definition of advertising injury under the policies, thereby distinguishing the Washington Court of Appeals decision which ruled against Atlantic Mutual.[2]  In addition, defendant argues that the underlying actions do not allege an offense during the policy period, and therefore defendant has no duty to defend plaintiff for any "occurrence" or "offense" which occurs after the expiration of the policy period.

Alternatively, defendant requests plaintiff's motion to be continued to allow for discovery.  Defendant argues that summary judgement is premature considering that plaintiff has not been cooperative with its requests to review files in the underlying patent infringement claims.

---

[1] In that case, a subsidiary of plaintiff, Amazon.com International, Inc. ("Amazon"), brought suit against Atlantic Mutual for failing to defend Amazon in a patent infringement lawsuit brought by Intouch Group ("Intouch") under the exact same policy as the 1997 and 1998 policies involved in the instant case.  The Court held that the advertising injury coverage in Atlantic Mutual's insurance liability policy covered a patent infringement lawsuit brought by Intouch for violation of its music preview technology.  *Amazon*, 120 Wn. App. at 613.

[2] Defendant argues in passing that it does not concede that this Court should apply Washington state law to this action.  (Dkt. #6 at 14).  However, the general rule is that the substantive law to be applied by the federal courts in diversity cases is the law of the state in which the court is located, except on matters governed by the Constitution or federal statute, none of which are at issue in this case.  *See Erie Railroad Company v. Tompkins*, 304 U.S. 64, 74-77, 58 S.Ct. 817 (1938).

## II.  DISCUSSION.

### A.  Background

This insurance dispute arises from three comprehensive general liability policies issued by defendant Atlantic Mutual Insurance Company ("Atlantic Mutual") to plaintiff Amazon.com, Inc. ("Amazon.com") (Dkt. #4 at 3).  In the first two policies, which are identical in language and were effective from May 15, 1997 through May 15, 1999 ("the 1997 and 1998 policies"), defendant agreed to defend plaintiff in any lawsuit seeking damages caused by an advertising injury.  (Dkt. #4 at 3).  The relevant language reads:

SECTION I - COVERAGES

* * *

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1.      Insuring Agreement.

      a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies.  We will have the right and duty to defend any "suit" seeking those damages.  We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. . . .

      b.      This insurance applies to: . . .

            (2)      "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services; but only if the offense was committed in the "coverage territory" during the policy period.

* * *

SECTION V - DEFINITIONS

1.      "Advertising injury" means injury arising out of one or more of the following offenses: . . .

      c.      Misappropriation of advertising ideas or style of doing business; . . .

(Dkts. #4 at 3 and #6 at 7-8).  The third policy, effective from May 15, 1999 through May 15, 2000 ("the 1999 policy"), also guarantees that defendant will defend plaintiff in lawsuits

seeking damages caused by an advertising injury, but contains different language. The relevant language reads[3]:

SECTION 1 - COVERAGES

* * *

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this *insurance* applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. *However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.* . . .

    b.    *This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.*

* * *

SECTION V - DEFINITIONS

1.    *"Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.* . . .

14.    *"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:* . . .

    f.    *The use of another's advertising idea in your "advertisement";* . . .

(Dkt. #6 at 8-9). Following the termination of these policies, three patent infringement claims were brought against plaintiff Amazon.com. The underlying lawsuits alleged patent infringement based on Amazon's use of the patents to sell products and services on Amazon.com's website. The first lawsuit was filed on August 16, 2002, by Charles E. Hill & Associates ("Hill") in United States District Court for the Eastern District of Texas, Marshall

---

[3] Italics denote differences between the 1997 and 1998 policies from the 1999 policy.

Division, alleging that Amazon.com was infringing upon three patents. (Dkt. #6 at 9). The patents involved are:

1) United States Patent No. 5,528,490 ("'490 Patent") issued June 18, 1996 - "an electronic catalog system and method for, among other things, producing information related to a selected product on a remote computer"

2) United States Patent No. 5,761,649 ("'649 Patent") issued June 2, 1998 - "a method for updating a remote computer as a means of storing product data"

3) United States Patent No. 6,029,142 ("'142 Patent") issued February 22, 2000 - "an electronic catalog system and method to, among other things, display product information data"

(Dkts. #4 at 4 and #6 at 9). These patents purportedly provide customers who are using Amazon.com with updated product data in an electronic catalog format. (Dkt. #4 at 4).

The second lawsuit was filed by Pinpoint, Inc. ("Pinpoint") on July 17, 2003 in United States District Court for the Northern District of Illinois, alleging infringement of four patents. (Dkt. #4 at 4). The patents involved are:

1) United States Patent No. 5,754,939 ("'939 Patent") issued May 19, 1998 - "System For Generation Of User Profiles For A System For Customized Electronic Identification of Desirable Objects"

2) United States Patent No. 5,758,257 ("'257 Patent") issued May 26, 1998 - "System And Method For Scheduling Broadcast of And Access To Video Programs And Other Date Using Customer Profile"

3) United States Patent No. 5,835,087 ("'087 Patent") issued November 10, 1998 - "System For Generation Of Object Profiles For A System For Customized Electronic Identification of Desirable Objects"

4) United States Patent No. 6,088,722 ("'722 Patent") issued July 11, 2000 - "System And Method For Scheduling Broadcast Of And Access To Video Programs And Other Data Using Customer Profile"

(Dkt. #4 at 4-5). These patents purportedly personalize certain products that are marketed to a customer on Amazon.com's website. (Dkt. #4 at 5). The patented technology can be used in various applications, "including . . . personalized electronic news, advertising, product recommendations, television and other 'e-commerce' situations." (Dkt. #4 at 5).

On December 6, 2004, Pinpoint's lawsuit was dismissed without prejudice to plaintiffs'

MEMORANDUM ORDER
PAGE - 5

right to refile the complaint for lack of standing.  (Pl. Exh. #4, Dkt. #21-1 at 1-2).  Pinpoint refiled the lawsuit on March 7, 2005, alleging infringements of only two of the four patents alleged in the first lawsuit, the '257 patent and the '722 patent.  (Pl. Exh. #4, Dkt. #22 at 1).  The '257 and '722 patents create "virtual channels" which broadcast pre-selected videos to customers on Amazon.com's website based upon each customer's "target profile interest summary."  (Dkt. #6 at 11).

The third lawsuit, filed by Soverain Software LLC ("Soverain") on January 12, 2004 in the United States District Court for the Eastern District of Texas, Tyler Division, alleged infringement of three patents.  (Dkts. #4 at 6 and #6 at 11).  The patents involved are:

1)   United States Patent No. 5,708,780 ("'780 Patent") issued January 13, 1998 - "Internet Server Access Control and Monitoring Systems"

2)   United States Patent No. 5,715,314 ("'314 Patent") issued February 3, 1998 - "Network Sales System"

3)   United States Patent No. 5,909,492 ("'492 Patent") issued June 1, 1999 - "Network Sales System"

(Dkt. #6 at 11).  The patented technology includes a "virtual shopping cart" for customers to process items which they wish to purchase.  *Id.*  Another aspect of the invention is to monitor the frequency and duration of access to various pages by customers which provides important marketing feedback including user demand, access pattern, and relationships between customer demographics and accessed pages across all accessed pages and access patterns.  (Dkt. #4 at 6).

Plaintiff provided notice of the patent infringement complaints to defendant on April 6, 2004.  (Dkt. #4 at 7).  Defendant did not respond to Amazon.com's tender of the defense of the lawsuits, and plaintiff proceeded to file a lawsuit in Washington state court on June 14, 2004 against defendant and American Economy Insurance Company ("American Economy")  (Dkt. #2 at 5).  American Economy was voluntarily dismissed from the state court proceeding on March 15, 2005, and defendant subsequently removed the case based on diversity of citizenship

MEMORANDUM ORDER
PAGE - 6

1    to this Court on April 14, 2005.  (Dkt. #6 at 12).

2          Plaintiff now seeks summary judgment that defendant has a duty to defend plaintiff in the

3    underlying patent infringement claims.  Specifically, plaintiff seeks an order establishing that: "1)

4    [defendant] Atlantic Mutual has breached its duty to defend and is liable for all reasonable

5    defense costs incurred in defending against the patent infringement lawsuits; 2) Amazon.com is

6    entitled to an award that would reimburse it for all reasonable defense costs that have already

7    been paid; 3) Amazon.com is entitled to 12% prejudgment interest on all paid defense costs,

8    running from the date of Amazon.com's payment or its notification of the claim to Atlantic

9    Mutual, whichever date is later; and 4) Amazon.com is entitled to its attorney fees in establishing

10   the duty to defend."  (Dkt. #4 at 2-3).

11         **B.  Summary Judgment Standard**

12         Summary judgment is appropriate when the Court finds there is "no genuine issue as to

13   any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R.

14   Civ. P. 56(c).  Summary judgment is a drastic remedy and is therefore granted cautiously.  *See*

15   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986) (recognizing that

16   "[n]either do we suggest that the trial courts should act other than with caution in granting

17   summary judgment).  However, if the standards of Rule 56 are met, summary judgment is not to

18   be regarded as a "disfavored procedural shortcut."  *Celetox v. Catrett*, 477 U.S. 317, 327, 106

19   S.Ct. 2548 (1986).  Furthermore, summary judgment establishing the existence of a duty to

20   defend under an insurance liability policy is an appropriate remedy available to the Court.  *See,*

21   *e.g.*, *Dewitt Constr. Inc. v. Charter Oak Fire Ins. Co.*, 307 F.3d 1127, 1137 (9th Cir. 2002)

22   (affirming summary judgment that insurer had duty to defend); *Anthem Electronics, Inc. v.*

23   *Pacific Employers Ins. Co.*, 302 F.3d 1049, 19060 (9th Cir. 2002) (finding that summary

24   judgment was required for insured unless insurer could conclusively negate coverage as a matter

25   of law).

26

MEMORANDUM ORDER
PAGE - 7

C.  **Duty to Defend**

The duty to defend is broader than the duty to indemnify.  *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wash.2d 55, 64, 1 P.3d 1167 (2000).  Further, the obligation of the liability insurer to defend an action brought against the insured is to be determined by the allegations of the complaint by the third party.  *See Baugh Constr. Co. v. Mission Ins. Co.*, 836 F.2d 1164, 1168 (9th Cir. 1988); *see also Unigard Ins. Co. v. Leven*, 97 Wn. App. 417, 425, 983 P.2d 1155 (1999) (holding that the duty to defend "arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage").

Where the complaint does not state facts sufficient to clearly bring the case under an insurer's coverage, the general rule is that the insurer is obligated to defend if there is potentially a claim under the complaint within the coverage of the policy.  *See, e.g., Allstate Ins. Co. v. Bowen*, 121 Wn. App. 879, 883, 91 P.3d 897 (2004) (holding that the duty to defend is based on the potential for liability); *see also R.A. Hanson Co. v. Aetna Ins. Co.*, 26 Wn. App. 290 , 294, 612 P.2d 456 (1980) (recognizing that there is a greater duty on the insurer to determine if the claim is potentially covered under the policy).  The insurer is relieved of its duty only if the alleged claim is *clearly* not covered within the policy's coverage.  *Kirk v. Mt. Airy Ins. Co.*, 134 Wash.2d 558, 561, 951 P.2d 1124 (1998) (Emphasis added).

The majority of cases have held that patent infringement is not covered by the misappropriation of an advertising idea in an insurance policy.  *See Auto Sox USA, Inc. v. Zurich North America*, 121 Wn. App. 422, 427 n.1, 88 P.3d 1008 (2004).  However, patent infringement may constitute an advertising injury "where an entity uses an advertising technique that is itself patented."  *Amazon*, 120 Wn. App. at 616 (emphasis omitted) (*quoting  Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1507 n.5 (9th Cir. 1994)).  Further, if the insured took an *idea* for soliciting business or an *idea* about advertising, then the claim is covered.  *Heritage*

1    *Mut. Ins. Co.v. Advanced Polymer Tech., Inc.*, 97 F.Supp.2d 913, 927 (S.D.Ind. 2000)

2    (Emphasis added).

3         An underlying patent infringement complaint triggers a duty to defend under an

4    insurance liability policy only if the allegations satisfy the policy definition for advertising injury,

5    and there is a causal connection between the allegations and the insured's advertising activities.

6    *Amazon*, 120 Wn. App. at 615; *see also Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d

7    1135, 1139 (9th Cir. 2003).  Additionally, the advertising injury must occur in the course of

8    advertising.  *Amazon*, 120 Wn. App. at  617.

9         1.  The 1997 and 1998 Policies

10        Defendant's 1997 and 1998 policies define "advertising injury" as an injury arising from

11   the "[m]isappropriation of advertising ideas or style of doing business."  (Dkt. #4 at 3).

12   Misappropriation of an advertising idea may be accomplished by the "wrongful taking of

13   another's manner of advertising."  *American States Ins. Co. v. Vortherms*, 5 S.W.3d 538, 543

14   (Mo.App. 1999).  The misappropriation must occur in the elements of the advertisement itself -

15   in its text, form, logo, or pictures - rather than in the product being advertised.  *Iolab Corp.*, 15

16   F.3d at 1506.

17        Plaintiff argues that the Washington Court of Appeals has definitively resolved

18   defendant's obligation to defend plaintiff under the 1997 and 1998 policies in *Amazon*.  While

19   that case involved an underlying patent infringement lawsuit against the insured under the same

20   policies at issue here, the patent allegedly infringed upon by the insured was an interactive music

21   preview technology enabling customers to listen to samples of music products over the Internet.

22   *Amazon*, 120 Wn. App. at 614.  In the instant case, the underlying patent infringement lawsuits

23   involve different patents and technology, such as electronic catalog systems, customized

24   electronic identification, and virtual shopping carts.  Therefore the Court must analyze each

25

26

MEMORANDUM ORDER
PAGE - 9

1   underlying patent separately to determine whether they trigger a duty to defend.[4]

2                               a.  The Hill Complaint

3          The underlying lawsuit brought by Hill alleges patent infringement of three patents, two

4   of which are covered under the 1997 and 1998 policies.[5]  The first is the '490 Patent, which Hill

5   alleges in its complaint is "an electronic catalog system and method for, among other things,

6   producing information related to a selected product on a remote computer."  (Dkt. #5-2 at 10).

7   Hill also alleges that the '649 Patent has been infringed by plaintiff, claiming that the Patent

8   "relates to a method for updating a remote computer as a means of storing product dat[a]."  *Id.*

9          While the Court generally has a duty to examine only the underlying complaint to

10  determine whether a duty to defend exists, an insurer's duty to defend is based on the potential

11  for liability.  *See Allstate*, 121 Wn. App. at 883.  Therefore the Court can examine the

12  underlying patents in greater detail to determine whether a duty to defend exists.

13         Furthermore, the two patents at issue relate "to an improved electronic catalog system

14  capable of providing a customer at a remote location with accurate updated product information

15  from a vendor each time the customer uses the electronic catalog system."  (Pl. Exh. #4, Dkts.

16  #16 at 6 and #17-5 at 2).  The patented technology is an electronic catalog system designed to

17  handle all "communications between the customer's computer and vendor's computer" and one

18  object of the invention is to "provide the customer with an instantaneous distribution of the

19  latest catalog data available."  *Id.*  While on the Internet, the customer "browses through general

20

21         [4] Relatedly, plaintiff argues that the doctrine of offensive collateral estoppel applies in this case.
    However, an argument raised for the first time in a reply brief on a summary judgment is not properly
22  before the Court.  *See Friends of the East Lake Sammamish Trial v. City of Sammamish*, 361 F.Supp.2d
    1260, 1272 n.8 (W.D. Wash. 2005).  Therefore plaintiff's offensive collateral estoppel argument is
23  unwarranted.

24         [5] The '490 Patent was issued on June 18, 1996, and the '649 Patent was issued on June 2, 1998,
    therefore potentially triggering a duty to defend under the 1997 and 1998 policies.  The '142 Patent was
25  issued on February 22, 2000 when the 1999 policy was in effect.  Therefore the '142 Patent will be
    discussed below under the 1999 policy.
26

MEMORANDUM ORDER
PAGE - 10

1   catalog data residing on the customer's computer and determines the exact catalog data

2   required." *Id.*

3        As a result, it is evident that plaintiff Amazon.com is using Hill's patented advertising

4   technique.  Plaintiff "took an idea for soliciting business" and "an idea about advertising" from

5   Hill.  *See Heritage*, 97 F.Supp.2d at 927.  Defendant argues that *Auto Sox* controls, because the

6   Court determined that patent infringement did not constitute an advertising injury.  121 Wn.

7   App. at 428.  However, in that case, the patent infringement revolved around the insured's

8   taking of an actual product, whereas here the alleged infringement is the taking of an idea.  The

9   patented technology at issue in the instant case allows customers on Amazon.com's website to

10  shop on a more narrowly tailored system which suits each customer's interest, and therefore

11  Amazon.com is not selling the patented product itself, but using the idea in the course of its

12  advertising.

13       Additionally, plaintiff Amazon.com's activities have caused the injury that Hill has

14  suffered.  Plaintiff's website "exists for the purpose of promoting products for sale to the public.

15  *This is advertising*."  *Amazon*, 120 Wash.App. at 617 (Emphasis added).  Defendant argues that

16  there is no causal link between the patent infringement and the advertising, citing to three cases

17  which found that the insurer did not have a duty to defend: *Simply Fresh Fruit, Inc. v.*

18  *Continental Ins. Co.*, 94 F.3d 1219 (9th Cir. 1996); *Microtec Research Inc. v. Nationwide Mut.*

19  *Ins. Co.*, 40 F.3d 968 (9th Cir. 1994); *Gitano Group, Inc.v. Kemper Group*, 26 Cal.App.4th 49,

20  31 Cal.Rptr.2d 271 (1994).  (Dkt. #15 at 30).  However, in all three cases, the insured claiming

21  a duty to defend committed patent infringement in conjunction with its advertising, whereas in

22  the instant case, plaintiff's website exists for the primary purpose of advertising.  *See, e.g.,*

23  *Simply Fresh Fruit*, 94 F.3d at 1222 (recognizing that the gravamen of the patent infringement

24  claim is the *use* alone).  But for plaintiff's infringement, Hill would not be suffering the

25  irreparable harm it alleges in its complaint.  Accordingly, defendant Atlantic Mutual has a duty

26

MEMORANDUM ORDER
PAGE - 11

1  to defend plaintiff regarding the '490 Patent and the '692 Patent under the 1997 and 1998

2  policies.

3                              b.  The Pinpoint Complaint

4          The original underlying lawsuit brought by Pinpoint alleged a violation of four patents by

5  plaintiff Amazon.com.  However, that complaint was dismissed for lack of standing by the

6  United States District Court for the Northern District of Illinois.  (Dkt. #21-1 at 1-2).  The

7  complaint was refiled on March 7, 2005, and the complaint alleged infringement only of the '257

8  Patent and the '722 Patent.  (Dkt. #22-1 at 1).  Although the two other patents are not before

9  the Court, plaintiff Amazon.com had to incur legal costs in defending the original underlying

10 lawsuit brought by Pinpoint on July 17, 2003.  Furthermore, plaintiff provided defendant

11 Atlantic Mutual with notice of these complaints on April 6, 2004.  (Dkt. #24).  Therefore, for

12 purposes of this analysis, the Court analyzes all four patents involved.

13         In both the original lawsuit and the most recent refiled lawsuit, Pinpoint alleges patent

14 infringement arising out of certain features on Amazon.com's website that personalize the

15 products that are marketed to a customer.  (Dkts. #19 at 4-6 and #22-1 at 4-6).  The complaint

16 alleges that the patented technologies "allow for the customized electronic identification of

17 desirable objects and access to data using customer profiles and object profiles."  *Id.*

18 Additionally, the complaint alleges that "Pinpoint's patented technology can be used in various

19 applications, including but not limited to, personalized electronic news, advertising, product

20 recommendations, television, and other 'e-commerce' situations."  *Id.*

21         Given the Court's duty to liberally construe the allegations contained in the complaint,

22 Pinpoint alleged that its patented technology was an element of plaintiff Amazon.com's

23 advertising.  Again, plaintiff's website "exists for the purpose of promoting products for sale to

24 the public.  This is advertising."  *Amazon*, 120 Wash.App. at 617.  Therefore Pinpoint's

25 complaint alleges that Amazon.com used its patented technology in its advertising.  In fact,

26

MEMORANDUM ORDER
PAGE - 12

1    defendant concedes that the technology is a misappropriation of an advertising idea and is being

2    used in the course of advertising.  (Dkt. #6 at 18).  Further, plaintiff Amazon.com infringed on

3    Pinpoint's patented idea, and but for this infringement, Pinpoint would not suffer the irreparable

4    harm it alleges in its complaint.

5          However, the '722 Patent was issued on July 11, 2000.  (Dkt. #6 at 11).  Defendant's

6    insurance liability policy expressly provides that the advertising injury must be "committed in the

7    'coverage territory' during the policy period."  (Dkt. #6 at 23).  The Patent was therefore issued

8    after the expiration of the last insurance liability policy issued by defendant, which terminated on

9    May 15, 2000.  (Pl. Exh. #1, Dkt. #5-2 at 1).    In fact, plaintiff conceded in oral arguments that

10   the '722 Patent fell outside the terms of defendant's insurance liability policy.

11         Accordingly, defendant has no duty to defend plaintiff in the underlying lawsuit alleging

12   infringement of the '722 Patent.  But the defendant did have a duty to defend plaintiff in the

13   original complaint regarding the '939 Patent, and the '087 Patent, and currently has a duty to

14   defend plaintiff in the refiled complaint regarding the '257 Patent under the 1997 and 1998

15   policies.

16                               c.  The Soverain Complaint

17         The underlying lawsuit brought by Soverain alleges patent infringement of three patents,

18   two of which are covered under the 1997 and 1998 policies.[6]  The Soverain complaint merely

19   mentions the title of each patent it alleges plaintiff Amazon.com infringed upon.  (Dkt. #20-1 at

20   2-3).  Therefore, similar to the Hill complaint, the Court can examine the underlying patents as

21   the insurer's duty to defend is based on the potential for liability.  *See Allstate, supra*, 121 Wn.

22   App. at 883.

23

24   _____

25         [6] The '780 Patent was issued on January 13, 1998, and the '314 Patent was issued on February 3,
     1998, therefore potentially triggering a duty to defend under the 1997 and 1998 policies.  The '492
26   Patent was issued on June 1, 1999 when the 1999 policy was in effect.  Like the Hill complaint, the last
     patent involved will be addressed below under the 1999 policy analysis.

MEMORANDUM ORDER
PAGE - 13

The '780 Patent "relates to methods of processing service requests from a client to a serve through a network." (Pl. Exh. #4, Dkt. #20-1 at 18). Additionally, the '780 Patent provides "important marketing feedback including user demand, access pattern, and relationships between customer demographics and accessed pages across all accessed pages and access patterns." *Id.* Meanwhile, the '314 Patent causes "digital advertisements to be transmitted to a user and for causing advertised products to be transmitted to the user." (Dkt. #4 at 6). As the defendant concedes, the patented technology creates a "virtual shopping cart" used by customers on Amazon.com's website to process items the customer wishes to purchase. (Dkt. #6 at 11).

Furthermore, the alleged injury triggers defendant Atlantic Mutual's duty to defend because the advertising injury relates to the wrongful taking of an idea by plaintiff Amazon.com. Patent infringement may constitute an advertising injury "where an entity uses an advertising technique that is itself patented." *Amazon*, 120 Wn. App. at 616 (emphasis omitted) (*quoting Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1507 n.5 (9th Cir. 1994)). Soverain has created a specific technology that is to be used in digital advertising, and plaintiff Amazon.com has adopted this idea in the course of its advertising. Further, plaintiff's alleged patent infringement is the direct cause of Soverain's alleged harm, and therefore a causal relationship exists between the advertising and the injury.

Defendant argues that the "virtual shopping cart" is not advertising because the product has already been purchased. (Dkt. #6 at 19). However, Soverain expressly describes the patents as a form of digital advertisement. The "virtual shopping cart" is a feature of plaintiff's advertising techniques, irrespective of whether the customer has purchased a product or not. In addition, the patented technology also monitors the frequency and duration of access to various pages by customers, thereby providing important marketing feedback to plaintiff. (Dkt. #4 at 6). Accordingly, defendant has a duty to defend plaintiff regarding the '780 Patent and the '314

MEMORANDUM ORDER
PAGE - 14

1    Patent under the 1997 and 1998 policies.

2              2.  The 1999 Policy

3          The 1999 policy contains different language than the 1997 and 1998 policies, defining

4    "advertising injury" as an injury suffered as a result of "[t]he use of another's advertising idea in

5    your 'advertisement.'" (Dkt. #6 at 9).  Only one court has addressed this language in the context

6    of an underlying patent infringement lawsuit.  *See Transcontinental Ins. Co.v. Jim Black &*

7    *Associates, Inc.*, 888 So.2d 671, 679 (Fla. App. 2004) (finding that the insurer had no duty to

8    defend the insured).  However, the Court did not adopt a specific rule or offer a rationale for

9    finding that the insurer had no duty to defend.  *Id.*

10         Additionally, the policy defines "advertisement" as a "notice that is broadcast or

11   published to the general public or specific market segments about your goods, products or

12   services for the purpose of attracting customers or supporters."  (Dkt. #11 at 9).  A court

13   interpreting the exact same language held that an "advertisement" must be published or

14   broadcast to a "relatively large and disparate audience."  *Rombe Corp. v. Allied Ins. Co.*, 128

15   Cal.App.4th 482, 492, 27 Cal.Rptr.3d 99 (2005) (finding that a breakfast hosted to ask specific

16   business people to be customers of a new business was a targeted solicitation, rather than an

17   advertisement for purposes of the policy). Therefore the remaining unanalyzed patents may be

18   evaluated by determining whether they meet the definition of an advertisement as defined by the

19   1999 policy.

20              a.  The '142 Patent in the Hill Complaint

21         Similar to the '490 Patent and the '649 Patent, the '142 Patent is designed as "an

22   improved electronic catalog system capable of providing a customer at a remote location with

23   accurate updated product information from a vendor each time the customer uses the electronic

24   catalog system."  (Dkt. #18-3 at 6).  Also, "one object of the present invention is to provide the

25   customer with an instantaneous distribution of the latest catalog data available."  *Id.*  Defendant

26

MEMORANDUM ORDER
PAGE - 15

1  acknowledges that the technology provides an expedited way for a computer to access

2  information on plaintiff's website. (Dkt. #6 at 22).

3      As mentioned above, plaintiff's website "exists for the purpose of promoting products

4  for sale to the public. This is advertising." *Amazon*, 120 Wash.App. at 617. Moreover, the

5  '142 Patent allows plaintiff to personalize advertisements to a "large and disparate audience."

6  *Rombe*, 128 Cal.App. 4th at 482. Defendant argues that only a single user accesses plaintiff's

7  website, and therefore the patented technology does not constitute advertising to a large

8  audience. (Dkt. #6 at 22). However, the patented technology targets the public at large, and

9  the purpose is to allow multiple users to benefit from the electronic catalog system.

10  Accordingly, defendant has a duty to defend plaintiff regarding the '142 Patent under the 1999

11  policy.

12              b. The '492 Patent in the Soverain Complaint

13      The '492 Patent "relates to user-interactive network sales systems for implementing an

14  open marketplace for goods or services over computer networks such as the Internet." (Pl.

15  Exh. #4, Dkt. #20-3 at 25). The patent "describes an alternative implementation of the network

16  sales system in which, when the user requests purchase of an advertised product, the buyer

17  computer sends a payment order directly to the payment computer." *Id.*

18      Defendant argues that there is nothing about the technology that suggests it is broadcast

19  to the general public, and does not have the purpose to attract customers. (Dkt. #6 at 22). In

20  addition, at oral arguments defendant argued that the "virtual shopping cart" could not

21  constitute an advertising injury because the contact and solicitation was made after an initial visit

22  by the customer. However, this argument is misguided because the technology is part of the

23  advertising process. For example, "[a] user at a buyer computer asks to have advertisements

24  displayed, and the buyer computer requests advertisements from a merchant computer, which

25  sends the advertisements to the buyer computer." (Pl. Exh. #4, Dkt. #20-3 at 25). While the

26

MEMORANDUM ORDER
PAGE - 16

technology comes at the latter part of the advertising process, it still meets the definition of advertisement under the 1999 policy as the patented technology is geared to a large audience in the course of advertising, regardless of whether the solicitation is made before or after the customer makes an initial visit.  The "virtual shopping cart" is essentially a feature of plaintiff's website, which exists for the primary purpose of advertising.  Accordingly, defendant has a duty to defend plaintiff regarding the '492 Patent under the 1999 policy.        **D.   Underlying Defense Costs Incurred By Plaintiff**

Plaintiff seeks a ruling that defendant is obligated to reimburse plaintiff for its reasonable defense costs and to pay ongoing costs.  (Dkt. #4 at 12).  Defendant responds that plaintiff is requesting broad relief considering plaintiff's motion is seeking a duty to defend.  (Dkt. #6 at 26).  However, when an insurer breaches his duty to defend, the insured must be put in as good a position as he or she would have been in had the contract not been breached, and damages may include "the amount of expenses, including reasonable attorney fees the insured incurred defending the underlying action[.]" *Griffin v. Allstate Ins. Co.*, 108 Wn. App. 133, 138-139, 29 P.3d 777 (2001).

Furthermore, where an insurer wrongfully refuses to defend, and there is no reasonable means of prorating the costs of defense between the covered and the not covered items, the insurer is liable for the *entire* cost of the defense.  *Nat'l Steel Const. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 14 Wn. App. 573, 576, 543 P.2d 642 (1975) (Emphasis added).  As a result, defendant is liable for plaintiff's entire cost of defense unless it can prorate the amount for which defendant is not liable as to the '722 Patent in the Pinpoint complaint which defendant does not have a duty to defend.[7]

---

[7] The Court recognizes the complexities involved in dividing and determining the exact amount that should constitute reasonable defense costs.  However, both parties have agreed in their Joint Status Report that "issues concerning the reasonableness of defense costs, including attorney fees, should be submitted to the Magistrate and the parties therefore consent to proceeding before the Magistrate for that specific purpose only."  (Dkt. #10 at 5).

MEMORANDUM ORDER
PAGE - 17

**E. Defendant's Request for a Continuance**

Because the Court has determined that summary judgment regarding defendant's duty to defend is appropriate with the exception of the '722 Patent in the Pinpoint complaint, it is not necessary to address defendant's request for a continuance.

### III. CONCLUSION

Having reviewed plaintiff's motion for summary judgment re duty to defend (Dkt. #4), defendant's response (Dkt. #6), plaintiff's reply (Dkt. #11), defendant's surreply (Dkt. #27), the declarations in support of those briefs, and the underlying patents at issue, the Court hereby GRANTS IN PART plaintiff's motion, and Orders that: 1) defendant has an ongoing duty to defend plaintiff in the three underlying lawsuits brought against plaintiff with the exception of the '722 Patent in the Pinpoint complaint; 2) defendant must reimburse plaintiff for all reasonable defense costs that have already been paid as determined by a Magistrate Judge, with the exception of the reasonable defense costs in defending the '722 Patent on the condition that it can prorate this amount; 3) plaintiff is entitled to 12% prejudgment interest on all paid defense costs, running from the date of plaintiff's payment or its notification of the claim to defendant, whichever date is later; and 4) plaintiff is entitled to its attorney fees in establishing the duty to defend.

The Court hereby DENIES IN PART plaintiff's motion as to the '722 Patent in the Pinpoint Complaint

The Clerk shall forward a copy of this Memorandum Order to all counsel of record.


DATED this 21st day of July, 2005.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

MEMORANDUM ORDER
PAGE - 18